IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 17- |
| v. | : | DATE FILED:          , 2017 |
| ASPLUNDH TREE EXPERTS, CO. | : | VIOLATION: 18 U.S.C. § 1324a(a)(1) and (f)(1) (Unlawful Employment of Aliens - 1 Count) Notice of Forfeiture |
| | : | |

**INFORMATION**

**Count One**

THE UNITED STATES ATTORNEY CHARGES THAT:

**BACKGROUND**

At all times material to this Information:

1. Defendant ASPLUNDH TREE EXPERTS, CO. (ASPLUNDH), a corporation headquartered in Willow Grove, Pennsylvania, was in the business of clearing brush and vegetation from electric and gas lines and the recipient of many municipal, state, and federal contracts.

2. Defendant ASPLUNDH, utilized the following supervisory structure throughout the United States to oversee its tree trimming and brush clearing operations. ASPLUNDH Sponsors were the highest ranking operations supervisors at corporation headquarters in Willow Grove, Pennsylvania. Sponsors were also Vice-Presidents at ASPLUNDH.

3. Sponsors at ASPLUNDH supervised Regional Managers who managed individual regions throughout the United States. The size of regions varied by geographical size

depending on the number and scope of utility contracts each region fulfilled. Regional Managers at ASPLUNDH supervised Supervisors (1st level supervisors), General Foremen (2nd level supervisors), and Foremen (3rd level supervisors).

4. Defendant LARRY GAUGER, charged separately by information, managed a regional office for ASPLUNDH located in Horsham, PA from on or about 2010 through December, 2014. Among his duties, defendant LARRY GAUGER supervised Supervisors, General Foremen, and Foremen. Defendant GAUGER reported to a Sponsor, whose identity was known to the United States Attorney.

5. The Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations investigates both criminal and administrative matters relating to persons and merchandise that enter or exit the United States.

6. Homeland Security Investigations is tasked with investigating both criminal and administrative violations relating to the hiring of aliens unauthorized to be employed in the United States.

7. The enactment of the Immigration Reform and Control Act required employers to verify the identity and employment eligibility of their employees and created criminal and civil sanctions for employment related violations. Section 274A (b) of the Immigration and Nationality Act, codified in 8 U.S.C. § 1324a(b), requires employers to verify the identity and employment eligibility of all individuals hired in the United States after November 6, 1986. Title 8 C.F.R. § 274a.2 designates the Employment Eligibility Verification Form I-9 (Form I-9) as the means of documenting this verification. Employers are required by law to maintain for inspection original Forms I-9 for all current employees. In the case of former

employees, retention of Forms I-9 are required for a period of at least three years from the date of hire or for one year after the employee is no longer employed, whichever is longer.

8. E-verfiy is a database managed by the Department of Homeland Security, Citizenship and Immigration Services. E-verify allows participating employers access to this database in an effort to assist them in confirming that their prospective employees are eligible to work in the United States. The database allows the user to verify that a particular Social Security number belongs to a particular individual. E-verify thus prevents the knowing usage of a false Social Security number, in as much as a "no match" warning will display if a Social Security number fails to be associated with that particular individual.

9. From November 19, 2009 until the present, pursuant to its statutory authority, Homeland Security Investigations audited defendant ASPLUNDH to review their Forms I-9 and verify that the company was in compliance with regard to the hiring of aliens authorized to work in the United States.

10. The Homeland Security Investigation audits revealed, among other information, a number of employees of ASPLUNDH that were working for the company even though they were ineligible to work in the United States. The results of these audits and the names of these employees who were determined to be ineligible to work in the United States were communicated to ASPLUNDH.

11. Defendant ASPLUNDH dismissed a number of the employees who were identified by Homeland Security Investigations in their audits and a number of employees resigned before final determinations were completed.

12. Approximately 100 of those dismissed employees had been working under

3

Supervisors and General Foremen in Region 21 in southeastern Pennsylvania, the region managed by defendant LARRY GAUGER.

13. From in or about 2010, through in or about December 2014, in the Eastern District of Pennsylvania, and elsewhere, the defendant, Asplundh, together with others known and unknown to the United States Attorney, knowingly accepted and received identification documents prescribed by statute or regulation as evidence of authorized stay or employment in the United States, knowing those documents to be procured by fraud and illegally obtained.

14. With the approval of his direct supervisor and Sponsor, whose name is known to the United States Attorney, defendant LARRY GAUGER, on behalf of defendant ASPLUNDH, instructed his supervisory personnel, including Supervisors and General Foremen, to accept and receive identification documents prescribed by statute or regulation as evidence of authorized stay or employment in the United States, including legal permanent resident cards, Social Security Cards, and other forms of identification, from some of those employees who resigned and were dismissed pursuant to the audit by Homeland Security Investigations, knowing those identification documents to be procured by fraud and illegally obtained.

15. Defendant LARRY GAUGER instructed management under him that it would have "plausible deniability" as to the fraudulent hiring because even though the employees' Social Security numbers did not truly belong to these employees, the employees' proffered Social Security numbers would be positive matches in the E-verify database.

16. Defendant LARRY GAUGER directed his personnel to accept false identification in order to facilitate the re-hiring of ASPLUNDH employees who were determined previously by Homeland Security Investigations to be aliens unauthorized to work in the United States.

17. Defendant LARRY GAUGER promoted the re-hiring of these unauthorized workers by reassigning the task of hiring and compliance from a compliance officer within the regional office in Horsham, Pennsylvania to Supervisors and General Foremen in the field.

18. Defendant LARRY GAUGER knew that the dismissed employees within his region were being re-hired under different and false names and false identity documentation and encouraged his Supervisors and General Foremen to continue this practice.

19. A Sponsor, whose identity was known to the United States Attorney, in response to the prospect of losing workers during a Homeland Security Investigations I-9 audit, encouraged Defendant LARRY GAUGER, to maintain his work force by re-hiring dismissed employees under different identification.

20. The decentralized nature of the hiring and recruitment of new employees by ASPLUNDH facilitated the rehiring of employees ASPLUNDH knew to be unauthorized by assigning the hiring to lower level supervisors in the field.

21. This decentralized hiring model by ASPLUNDH allowed for the hiring of individuals who were determined previously by Homeland Security Investigations to be aliens unauthorized to work in the United States, throughout many regions in the United States between 2010 and December, 2014.

## EXAMPLES

The following are four instances that represent the manner in which many more employees ineligible to work in the United States were hired and rehired by ASPLUNDH. On or about each of the dates listed below, employees of Asplundh Tree Experts, Inc. who were previously identified in a Homeland Security Investigations audit to be aliens unauthorized to

work in the United States, were re-hired by a Supervisor at the direction of Vice- President and Regional Manager LARRY GAUGER, and at the direction of a Vice-President and Sponsor, whose identity was known to the United States Attorney, under new and fraudulently obtained identification documents.

| Date | Hiring Supervisor | Former Employee Name | New Employee Name |
|---|---|---|---|
| October 2012 | J.S. | Danny Palao | Jose Feliciano |
| April 2014 | J.R. | Fernando Bautista | Jorge Rivera-Rivera |
| April 2014 | J.R. | Jean Carlos Vega Ortiz | Rene Gutierrez |
| June 2014 | J.S. | Gabriel Castro Santiago | J.A.A. |

In violation of Title 8, United States Code, Section 1324a(a)(1) and (f)(1).

## NOTICE OF FORFEITURE

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

As a result of the violation of Title 8, United States Code, Section 1324a(a)(1) and (f)(1) set forth in this information, defendant

### ASPLUNDH TREE EXPERTS, CO.

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offense, including, but not limited to the sum of at least $80,000,000.00

If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(a)6), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(6).

**LOUIS D. LAPPEN**
**Acting United States Attorney**